**Clyde Clifton MURPHY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 912–82.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 21, 1983.

Dissenting Opinion Overruling Rehearing Feb. 8, 1984.

Percy Foreman, Lewis Dickson, Houston, for appellant.

Gerald A. Goodwin, Dist. Atty., Joe Crawford and Wesley Hoyt, Asst. Dist. Attys., Lufkin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. The jury assessed punishment at 99 years and a fine of $10,000.00. The conviction was affirmed by the Beaumont Court of Appeals, Ninth Supreme Judicial District. We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that neither the indictment nor the trial court's charge is fundamentally defective and that the felony murder merger doctrine does not apply in this case.

The indictment alleges appellant, on February 9, 1980, "did then and there commit the felony offense of arson by then and there starting a fire in a habitation ... owned by Clyde Clifton Murphy, with intent to damage and destroy said habitation and to collect insurance for such damage and destruction, and while in the course of and furtherance of the commission of said offense did then and there commit an act clearly dangerous to human life, to-wit: did start a fire in a habitation, and did thereby cause the death of an individual, John Thomas Johnson."

Appellant contends the indictment is fundamentally defective "because the State er-

roneously set out the constitutent elements of the underlying arson under a partially repealed version" of V.T.C.A. Penal Code, Sec. 28.02. Effective Sept. 1, 1979, Sec. 28.02, supra, was amended to read as follows:

> "(a) A person commits an offense if he starts a fire or causes an explosion with intent to destroy or damage any building, habitation, or vehicle:
>
> " . . .
>
> "(2) knowing that it is insured against damage or destruction;" [1]

Because it omits the phrase "knowing it [the habitation] is insured against damage or destruction," appellant argues the indictment is fundamentally defective.

If a charging instrument omits specific reference to a word, term, or phrase that is a constituent element of the offense but, from reading the indictment as a whole, that element is supplied by *necessary* inclusion within an expressed word, term, or phrase, then the failure to specifically plead the word, term, or phrase will not render the charging instrument fundamentally defective. *Dennis v. State*, 647 S.W.2d 275 (Tex.Cr.App.1983). See also Art. 21.17, V.A.C.C.P. In order to possess the intent to collect insurance for the damage and destruction as alleged in the indictment, appellant *necessarily* had to *know* the house was insured. The constituent element of "knowing the habitation is insured" therefore is supplied by necessary inclusion within an expressed word, term, or phrase in the charging instrument. We find the indictment is not fundamentally defective.

Appellant also contends the trial court's charge is fundamentally defective because it too instructed the jury in the language of prior Sec. 28.02, supra. The court charged the jury as follows:

> "A person commits the offense of arson if he starts a fire with intent to destroy
>
> " . . .
>
> "(2) with intent to destroy or damage a building or habitation to collect insurance for the damage or destruction."

---

1. Prior to amendment Sec. 28.02, supra, read as follows:

> "(a) A· person commits an offense if he starts a fire or causes an explosion:

or damage any building to collect insurance for the damage or destruction.

" . . .

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Clyde Clifton Murphy, did . . . commit the felony offense of Arson by then and there starting a fire in a habitation located in Angelina County, Texas, owned by Clyde Clifton Murphy, with intent to damage and destroy said habitation and to collect insurance for such damage and destruction, and while in the course of and furtherance of the commission of said offense did then and there commit an act clearly dangerous to human life, to wit: did start a fire in a habitation, and did thereby cause the death of an individual, John Thomas Johnson, you will find the defendant guilty."

Because the court's charge required the jury to find appellant had the intent to collect insurance for the damage and destruction to the habitation, it necessarily required the jury to find appellant knew the habitation was insured. We find the trial court's charge is not fundamentally defective.

Appellant further maintains the merger doctrine operates as a bar to his prosecution for felony murder. He argues, "the conduct that allegedly constituted the gist of the underlying felony, namely, 'starting a fire,' was the exact same act alleged to have been clearly dangerous to human life and thus was 'inherent in the homicide.' "

Sec. 19.02(a)(3), supra, the "felony murder rule," provides that a person commits an offense if he:

"commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual."

In *Garrett v. State*, 573 S.W.2d 543 (Tex. Cr.App.1978), however, we held that the felony murder doctrine does not apply where the precedent felony is an assault inherent in the homicide. Garrett's conviction could not stand because the underlying aggravated assault and the act resulting in the homicide were one and the same. This limitation on the felony-murder rule is known as the merger doctrine.

■ In the instant cause, the indictment alleges and the proof shows that appellant was engaged in felonious criminal conduct, namely, arson at the time the deceased was killed. Therefore, as required in *Garrett*, there was a showing of felonious criminal conduct other than the assault which caused the homicide. Unlike *Garrett*, appellant's act of arson in setting a habitation on fire and the resulting homicide of the victim were not one in the same. In this case, appellant attempted to set fire to a house in order to destroy it and collect insurance money, a property offense, and in the furtherance of such offense, the deceased was killed.

■ That the felony murder rule was intended by the Legislature to be applied to homicides perpetrated in the course of and in furtherance of the commission of arson is clear from the Practice Commentary to Sec. 28.02:

"Causing the death [of any person] . . . ordinarily would constitute murder under Section 19.02(a)(3) and be punishable as a first-degree felony."

Appellant is incorrect in his assertion that *Garrett* requires the reversal of his conviction.

Lastly, appellant contends both the indictment and the trial court's charge are fundamentally defective for failure "to ascribe any culpable mental state to the conduct attributed to appellant." He maintains the indictment failed to allege, and the court's charge failed to instruct the jury to find, (a) he intentionally or knowingly committed arson; (b) he intentionally or knowingly committed an act clearly dangerous to human life.

■ The Practice Commentary notes that "the mental element required under

Sec. 28.02 is intent;" that is, "starts a fire or causes an explosion with intent to destroy or damage ... knowing ..." No mental state, therefore, is required under Sec. 28.02, supra, for "starting a fire."

▮▮▮▮ Furthermore, a felony murder situation implicates the theory of transferred intent. *Kuykendall v. State,* 609 S.W.2d 791 (Tex.Cr.App.1980). The culpable mental state for the act of murder is supplied by the mental state accompanying the underlying felony giving rise to the act. *Rodriquez v. State,* 548 S.W.2d 26 (Tex.Cr. App.1977). The mental state of *intent* accompanying the underlying felony of arson thus supplies the mental state for the act of felony murder. It is unnecessary to allege additional mental states in the indictment or to instruct the jury they must find appellant "intentionally or knowingly committed arson" and "intentionally or knowingly committed an act clearly dangerous to human life." No error is shown.

The judgment of the Court of Appeals is affirmed.

### OVERRULING OF APPELLANT'S MOTION FOR REHEARING.

TEAGUE, Judge, dissenting.

Because I find that the majority erroneously overrules appellant's motion for rehearing without opinion, I am compelled to dissent.

The original opinion in this cause should either be withdrawn or overruled because it erroneously concluded that the death of the deceased was not caused by the same act which constituted the commission of the offense of arson. However, the indictment in this cause alleges on its face that the starting of the fire was the act which constituted both the underlying offense of arson *and* the "clearly dangerous" act which caused the death. Of course, the State was not required to allege the act which constituted the arson. However, once it did, it was then bound by its allegations.

I now find that it is clear as crystal that the State's reliance upon the same act to constitute both the underlying felony offense of arson and the act clearly dangerous to human life which caused the death of the deceased violates the doctrine of merger in that the only act shown to be the commission of the offense of arson, the underlying felony, is one and the same act which caused the death of the deceased. Furthermore, appellant's counsel has clearly pointed out in the briefs he has filed with this Court that V.T.C.A., Penal Code, Section 19.02(a)(3), the felony-murder statute, contemplates that a homicide can become murder, when not committed intentionally or knowingly, only if the act which causes the death occurs in the course of and in furtherance of the commission of or attempt to commit a felony other than voluntary or involuntary manslaughter, or in flight from such commission or attempt. Thus, it follows that the homicide can become murder only when some act evidencing the commission or attempted commission of the underlying felony offense is separate and distinct from the act which causes the death of the deceased.

This limitation on the felony-murder rule can easily be seen in both *Aguirre v. State,* — S.W.2d — (Tex.Cr.App.1984) (Presently pending on rehearing. See our cause number 62,033, original opinion handed down on July 14, 1982), and *Garrett v. State,* 573 S.W.2d 543 (Tex.Cr.App.1978).

I acknowledge that *Garrett v. State,* supra, can be distinguished from both *Aguirre v. State,* supra, and this cause, because it concerned an assault as the underlying offense whereas in *Aguirre v. State,* supra, and this cause the underlying felony is a non-assaultive offense. Nevertheless, the "same act" doctrine applied in *Garrett v. State,* supra, is applicable to both this cause and *Aguirre v. State,* supra.

The applicability of the "same act" doctrine is also reflected by the fact that in 1981 the Legislature amended V.T.C.A., Penal Code, Section 28.02, the arson statute, which amendment occurred after the instant offense was committed, but before *Aguirre v. State,* supra, was delivered. Where the arson causes a death, the

amended statute provides that the range of punishment for that offense is the same as that for the offense of murder. Thus, the amendment to the arson statute at least indicates that the Legislature intended for a death caused by arson to be treated as seriously as the offense of murder, even though the death that was caused by the arson is not murder per se. If any death caused by the commission of the offense of arson would constitute murder, this would render the amendment a meaningless act on the part of the Legislature because the offense of causing death by arson was already punishable as a first degree felony under the felony-murder statute.

Appellant's contention that the State relied upon the same act to constitute both the underlying felony offense of arson and the act clearly dangerous to human life which caused the death of the deceased should be sustained.

I have also found that there is another reason why appellant's motion for rehearing should be granted, and that is because an allegation of "intent to collect insurance" does not necessarily include knowledge that the ostensibly insured object or person is insured.

In *Dennis v. State,* 647 S.W.2d 275 (Tex. Cr.App.1983), this Court held that where an indictment omits an element of an offense as it is defined, the indictment becomes fundamentally defective unless language in the indictment necessarily includes the omitted element. This Court also noted that an allegation of knowledge carries with it an implication that the thing known is a fact which actually exists. In contrast, an allegation of "belief" merely refers to the defendant's subjective state of mind, and does not necessarily mean the thing believed is an actual fact in existence. This distinction is also reflected in several opinions holding that a habeas corpus affidavit referring to the applicant's belief is insufficient. See *Ex parte Young,* 418 S.W.2d 824 (Tex.Cr.App.1967); *Ex parte Jackson,* 616 S.W.2d 625 (Tex.Cr.App.1981); *Ex parte Brooks,* 637 S.W.2d 955 (Tex.Cr.App. 1982). Therefore, "intent," like "belief," merely refers to the subjective state of the mind of the defendant. In this instance, appellant may have intended to collect insurance when he set fire to the house, yet he might not have "known" it was uninsured because the insurance policy had lapsed.

Since September 1, 1979, the offense of arson, as relevant to the facts of this case, has required that the person starting a fire must do so with the intent to destroy or damage the habitation, and must do so "knowing that it is insured against damage or destruction." Thus, in light of the above, the habitation must in fact be insured against damage or destruction at the time the fire is set before the setting of the fire can constitute the offense of arson. In this cause, the charge to the jury allowed the jury to convict appellant of murder if they only found appellant had committed arson by setting the house on fire with intent to collect insurance. However, it was not required to find either that appellant knew that the house was insured or that the house was in fact insured. Therefore, the charge to the jury was fundamentally defective because it did not require the jury to find all of the elements necessary to constitute the offense of arson, which, of course, was a necessary predicate before appellant could be found guilty of felony-murder.

For the above reasons, I dissent to the overruling of appellant's motion for rehearing without written opinion.