

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | 08-20-00168-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. One |
| GABRIELA QUIROZ MACEDO, | § | of Williamson County, Texas |
| Appellee. | § | (TC# 20-0505-CC1) |

## DISSENTING OPINION

I write separately because I believe the habeas court properly exercised its discretion in granting Appellee habeas relief. Appellee's criminal defense attorney performed below an objective standard or reasonableness which adversely affected Appellee, and the defense of laches does not bar Appellee of habeas relief. I, therefore, respectfully, dissent.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Pursuant to *Strickland*, a habeas applicant must establish counsel's performance that falls below an objective standard of reasonableness under prevailing professional norms, while considering all the circumstances. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The applicant must overcome the presumption that counsel's conduct falls within the wide range of reasonable, professional assistance. *Id*. at 689. Because representation is an art, and an act or

omission that is incompetent in one case may be sound in another, an applicant must also show that the alleged error of counsel was unreasonable and had an actual, adverse effect. *Id*. at 693.

## *Analysis*

With respect to the performance component, the record shows Watson's conduct fell below the standard of reasonable professional assistance, particularly considering the immigration context of this case. *Padilla* emphasized that no criminal defendant, irrespective of immigration status, should be left to the "mercies of incompetent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010)(*citing McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Accordingly, it established a landmark holding for criminal defendants in the immigration context, holding that counsel must advise his client whether her plea carries a risk of deportation. *Padilla*, 559 U.S. at 374. However, due to the complexity of immigration law, the deportation consequences of a particular plea are not always clear. *Id*. at 369. Thus, the Court declared:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

*Id*.

At the time of Appellee's plea, she had a prior conviction for possession of a controlled substance in Travis County, Texas. At the time, in the Fifth Circuit, this prior conviction rendered Appellee's second conviction for possession of a controlled substance an aggravated felony for immigration purposes, which the habeas court correctly stated in its conclusions of law. *Carachuri-Rosendo v. Holder*, 570 F.3d 263, 267-68 (5th Cir. 2009), *cert. granted*, 558 U.S. 1091 (2009), *rev*'d, 560 U.S. 563 (2010).[1] Noncitizens, such as Appellee, who commit aggravated felonies, are

---

[1] The majority is correct that "[t]wo days after Quiroz Macedo was released from the ICE detainer to her mother, the Supreme Court handed down their opinion in *Carachuri-Rosendo* holding a second simple possession conviction that

2

deportable. 8 U.S.C. § 1227(a)(2)(A)(iii) (2008).

The majority, in my view, focuses on the immigration status of Appellee at the time she entered her plea, and on "a period of time when the law concerning immigration consequences and their interplay with a criminal plea of guilty was in such a state of transition of change."[2] The fact that the Supreme Court issued *Padilla* less than ten days before Appellee entered her plea of guilty does not excuse Watson's ineffective assistance and is of no consequence to Appellee.[3] The Fifth Circuit rendered the deportation consequences of Appellee's guilty plea as truly clear, and thus, Watson had a duty to correctly advise Appellee before she entered her plea. *Carachuri-Rosendo*, 570 F.3d at 267-68; *see also Padilla*, 559 U.S. at 369.

In Watson's affidavit, he discussed his inexperience in criminal law at the time he represented Appellee, specified he never consulted with immigration attorneys about the specific immigration consequences, and stated he had no experience with immigration law as he had never practiced immigration law. The majority posits Appellee has failed to meet her burden because "[a]t best, [Espinosa's] affidavit raised only speculation of a failure by Watson." I disagree. Additionally, the argument that the judicial admonishments within Appellee's guilty plea, which she signed, warrant her knowledge of the deportation consequences, is legally misleading. While judicial admonishments create a prima facie showing that a guilty plea was knowing and voluntary,

was not enhanced based on the fact of the prior conviction is not to be considered an aggravated felony. 560 U.S. at 573." However, at the time Appellee plead guilty, and according to the Fifth Circuit, Appellee's first conviction for possession of a controlled substance rendered her second conviction an aggravated felony for immigration purposes. *Carachuri-Rosendo*, 570 F.3d at 267-68.

[2] The majority, and the State, maintain Appellee's unlawful status at the time of her plea rendered her automatically deportable and the State appears to argue *Padilla* is inapplicable. Appellee counters, "The Constitution affords the Sixth Amendment's right to counsel to *all* defendants, not just to defendants who are lawfully present in the United States. . . . In *Padilla*, the Supreme Court held that defense counsel has an obligation to explain immigration consequences to 'noncitizen' clients. *See, e.g., Padilla*, 559 U.S. at 366, 369, 373 (stating throughout that attorneys must advise 'noncitizen clients')." I agree.

[3] *Padilla* was issued on March 31, 2010, and Appellee signed her guilty plea on April 8, 2010. *See Padilla*, 559 U.S. at 356.

a plea may nonetheless be involuntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App. 1998). Watson was required to advise Appellee of the risk of deportation pursuant to *Padilla* and his failure to do so fell below the standard of reasonable professional assistance. 559 U.S. at 367.

With respect to the prejudice component of *Strickland*, I focus on Appellee's affidavit, in which she maintains Watson did not inform her of the immigration consequences of her plea. 466 U.S. at 699. Appellee assured the habeas court she would not have entered the guilty plea and would have proceeded to trial had she been advised of the immigration consequences. The majority opines Appellee's affidavit alone fails to meet the burden to show prejudice but does not offer case law in support of this position, nor am I aware of any. My reading of the record finds the habeas court did not solely rely on Appellee's affidavit; in its findings of fact, the habeas court relied on the credible affidavits of both Appellee and Espinosa, and other supporting documents, such as Appellee's I-213 form from the U.S. Department of Homeland Security. The form states Appellee is a deportable, excludable alien and specifically asserts, "Subject was found in the Williamson County Jail on March 10, 2010, after having been arrested for POCS. Immigration Enforcement Agent Carl interviewed the subject, and lodged an ICE detainer with Williamson County- at that time." The habeas court found the following findings of fact:

17. The trial court has reviewed the affidavit of immigration attorney, Patrick Espinosa. The trial court finds Espinosa is a credible witness and the contents of his affidavit are credible.

18. Espinosa is currently representing Applicant in ongoing immigration proceedings directly connected to her conviction in this case; therefore, is not a United States Citizen.

19. Espinosa is representing Applicant currently in removal proceedings, facing deportation, and has not been at risk for deportation until recently. Applicant's conviction in this matter automatically bars her from cancellation of removal.

In my view, it was not an abuse of discretion for the habeas court to determine these findings of

4

fact.

In habeas petitions, Article 11.14(5) of the Texas Code of Criminal Procedure requires that an "[o]ath must be made that the allegations of the petition are true, according to the belief of the petitioner." TEX.CODE CRIM.PROC.ANN. art. 11.14(5). The affidavits of Appellee and Espinosa are in compliance with Article 11.14(5), which make them legally sufficient to base my support and reliance on. *See Ex parte Johnson*, 811 S.W.2d 93, 96 (Tex.Crim.App. 1991)("[A] petition for writ of habeas corpus is not required to contain sworn allegations of fact or be made upon an unqualified oath, but rather the qualified oath of Art. 11.14(5) is required and *legally sufficient* for verification of a petition for writ of habeas corpus.")[Emphasis added].

The majority further argues Appellee failed to support her position that she would not have pleaded guilty had she known the immigration consequences because she failed to produce the court reporter's record, which again, is of no consequence to Appellee or her constitutional rights. The retention policy of the trial court that lead to the destruction of the record does not bar Appellee of the relief she requests. Nearly ten years later, Appellee is currently at risk for deportation. Prejudice could not be more apparent.

Appellee sufficiently alleged her trial counsel was constitutionally deficient. The habeas court did not abuse its discretion by finding Watson provided ineffective assistance of counsel.

### DEFENSE OF LACHES

Habeas corpus is an extraordinary remedy based on principles of fairness and equity. *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex.Crim.App. 2014). This form of equitable relief is a case-by-case inquiry in which courts should consider the length of the applicant's delay, the reasons for the delay, and the degree and type of prejudice borne by the State resulting from the delay. *Id*. at 666-67. However, mere delay alone will not bar an applicant from relief. *Id*. at 667.

*Analysis*

In the record is Appellee's I-213 form from the U.S. Department of Homeland Security, in which it states, "Record of Deportable/Excludable Alien: QUIROZ-Macedo, Gabriella . . . ." As previously stated, Appellee, a deportable, excludable alien, was found in the Williamson County jail due to her arrest of March 10, 2010—the underlying conviction—and was thereafter interviewed by immigration authorities and detained by ICE. In a signed affidavit dated May 4, 2020, Appellee's current immigration counsel, Espinosa, confirmed Appellee is currently at risk for deportation and has not been at risk for deportation until only recently. Espinosa further stated Appellee's underlying conviction automatically bars her from cancellation of removal, which but for this conviction, she would likely be eligible due to her three-year-old son's rare chromosomal disorder—Appellee's son is a U.S. citizen. The majority characterizes Espinosa's affidavit as "sparse and conclusory" and opines that it does not reasonably explain the delay in filing the writ application and does not satisfy any of the criteria for excusing the delay. The delay is merely due to Appellee only *recently* being at risk for deportation.

I also disagree that the destruction of the trial record is disadvantageous to the State to the extent it is impossible to know whether Appellee received oral admonishments concerning the immigration consequences of her plea. As a reviewing court, we view the facts in the light most favorable to the trial court's ruling and in reference to habeas courts, we afford almost total deference to facts supported by the record. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *see also Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex.Crim.App. 2005)(Cochran, J., concurring)("a reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit . . . ."). Appellee, a noncitizen seeking relief under the equitable doctrine of habeas corpus, who involuntarily pled guilty to a crime that

has only recently rendered her deportable, is the disadvantaged party. I must emphasize that equity does not require that Appellee be barred from relief by mere delay alone. *See Ex parte Smith*, 444 S.W.3d at 667. Because Appellee has been at risk for deportation until only recently, the delay is neither unduly nor unreasonable. Appellee's petition is not barred by laches.

## CONCLUSION

For these reasons, I respectfully dissent from the Court and recommend affirming the habeas court's judgment.

August 15, 2022

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Alley, J., and Gabriel, J. (Ret.)
Gabriel, J. (Ret.)(Sitting by Assignment)

(Do Not Publish)